NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | Crim. No. 99-253 (RBK) |
| v. : | **OPINION** |
| JOHN JAY POWERS, : | |
| Defendant. : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the following Motions: (1) Defendant's Motion to Appoint Counsel (Doc. 142); (2) Defendant's Motion to Reconstruct the Record (Doc. 146); (3) Defendant's Motion to Correct Omission in the Record (Doc. 147); (4) Defendant's Motion for Settlement and Approval of Record (Doc. 148); (5) Defendant's Motion to Enter Order (Doc. 149); (6) Defendant's Motion for Reduction of Sentence Under First Step Act (Doc. 151); and (7) Defendant's Motion to Dismiss Several Pending Motions as Moot (Doc. 156).

**I.     BACKGROUND**

Defendant is John Jay Powers, an individual who has been convicted of multiple crimes and sentenced by courts in multiple jurisdictions. First, Defendant was convicted of possession of a stolen motor vehicle, robbery, and criminal contempt in the Middle District of Florida. (Doc. 158, United States' Opposition to Defendant's Motions to Settle the Record and For Compassionate Release, "Opp." at 3.) Defendant was sentenced to a term of 254 months' imprisonment for the first two charges and a separate 5 and a half months' imprisonment for the

1

criminal contempt charge. (*Id.*) Second, Defendant was convicted of bank robbery in the Southern District of Indiana and was sentenced to 66 months' imprisonment, to run consecutive to the sentences from the Middle District of Florida. (*Id.* at 4.)

While Defendant was serving these sentences at FCI Fairton, Defendant escaped from custody. (*Id.*) Defendant was captured and convicted of transportation of a stolen vehicle and escape from a correctional facility in the District of New Jersey. (*Id.* at 4–5.) Judge Irenas presided over Defendant's sentencing hearing, which occurred over the course of two separate days: September 10, 2001 and October 1, 2001. (*Id.* at 5.) A transcript is available for the first hearing, however, neither party has been able to locate a transcript for the October 1, 2001 hearing. The September 10 transcript indicates that Judge Irenas was aware of Defendants convictions and sentences in both the Middle District of Florida and the Southern District of Indiana. (Doc. 158, Ex. C "Sept. 10 Tr." at 47, 50, 59.) On October 1, 2001, Judge Irenas orally sentenced Defendant to 45 months' imprisonment. (Opp. at 6.) The written judgment reflecting the oral sentence provided that the sentence should run consecutive to the sentences from the Middle District of Florida. (*See* Doc. 120 "Judgment.") However, the Judgment was silent as to whether the sentence would run concurrent with or consecutive to the sentence from the Southern District of Indiana. (*See id.*) In light of the silence, the Bureau of Prisons ("BOP") ran the sentences consecutively to both the Middle District of Florida and the Southern District of Indiana sentences. (Opp. at 6.) While serving his various sentences in the United States Penitentiary in Arizona, Defendant assaulted a staff member. In 2015, he pled guilty to assault on a federal officer. (*Id.* at 7.) Defendant was sentenced to 33 months' imprisonment for this charge. (*Id.*)

In 2018, Defendant filed a habeas petition in the District of Colorado. *Powers v. Stancil*, No. 18-cv-01226, 2019 WL 10435093, at *1 (D. Colo. Feb. 5, 2019). In the habeas petition,

Defendant requested the court to order the BOP to run his sentence for escape and transportation of a stolen vehicle in the District of New Jersey concurrently with the sentence in the case from the Southern District of Indiana. *Id.* at *3. The district court rejected Defendant's argument, and Defendant appealed. *See Powers v.* Stancil, 794 Fed. App'x 736 (10th Cir. 2019). The Tenth Circuit held that there was "no merit to Powers' argument [that] his sentence for escape and transportation of a stolen vehicle . . . should be interpreted to run concurrent with his sentence in the Southern District of Indiana because the court was aware of the undischarged Indiana sentence and chose not to run its sentence consecutively." *Id.* at 740. The Tenth Circuit found that there was "no record evidence to support" Defendant's claim, and "because this sentence plainly was imposed at a different time, the district court properly concluded the sentences were to run concurrently." *Id.* Accordingly, the Tenth Circuit affirmed the district court's holding that the "sentence for escape and transportation of a stolen vehicle should run consecutive to his sentence for bank robbery in the Southern District of Indiana." *Id.*

Following the decision and appeal in the Tenth Circuit, Defendant moved this Court to Correct an Error in the Judgment and Commitment Order under Federal Rule of Criminal Procedure 36. (Doc. 126.) In his Motion, Defendant requested this Court to issue an order correcting the Judgment to the following (proposed "corrections" in brackets):

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 45 months on each of Counts One and Two, to be served concurrently. The term of imprisonment imposed by this judgment shall run consecutively with the defendant's term of imprisonment pursuant to the judgments in Docket Number 89-60-CR-T-15B and 89-61-CR-T-13, Middle District of Florida[,] [only.]

(Doc. 126.) Defendant argued that the clerk issuing the Judgment following the oral imposition of sentence had omitted the word "only" from the written order. (*See id.*) This Court denied that Motion, finding that the Defendant "fail[ed] to demonstrate thorough, competent evidence such as

3

a transcript or any kind of court record that the judgment d[id] not reflect the actual sentence imposed by the court." (Doc. 140.) Defendant appealed that Order (Doc. 141), and the appeal is currently pending. Since then, Defendant has filed seven different motions in this Court, seeking to reduce his sentence: (1) Motion to Appoint Counsel (Doc. 142); (2) Motion to Reconstruct Record (Doc. 146); (3) Motion to Correct Omission in the Record (Doc. 147); (4) Motion for Settlement and Approval of Record (Doc. 148); (5) Motion to Enter Order (Doc. 149); (6) Motion for Reduction of Sentence Under First Step Act (Doc. 151); and (7) Motion to Dismiss Several Pending Motions as Moot (Doc. 156). The Government opposed the motions collectively. (Doc. 158.)

## II. LEGAL STANDARD

### A. Motion to Correct a Clerical Error

Under Federal Rule of Criminal Procedure 36 "the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." This rule applies to *clerical errors* only. *See id.* Therefore, a court may "correct only clerical errors in the transcription of judgments" and may not use Rule 36 to "effectuate its unexpressed intentions at the time of sentencing." *United States v. Burd*, 86 F.3d 285, 288 (2d Cir. 1996). A clerical error must be one of judgment or even of misidentification, but merely of recitation, . . . mechanical in nature." *United States v. Guevremont*, 829 F.2d 423, 426 (3d Cir. 1987). In other words, Rule 36 does not provide a basis to change the internal structure of a sentence. *See id.* Moreover, a contention that the judgment "was ambiguous, indefinite and equivocal" does not afford a basis for relief under this Rule. *See, e.g.*, *United States v. Duncan*, 310 F.2d 367, 369 (7th Cir. 1962).

### B. Motion to Reconstruct the Record

Under the Federal Rules of Appellate Procedure, a party may request the court to reconstruct the record for purposes of appeal when a transcript of an oral hearing is unavailable and the proceeding was not recorded. Rule 10(c) sets forth the procedure the parties must follow. First, "[i]f the transcript of a hearing . . . is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." Fed. R. App. P. 10(c). Second, in response, the appellee "may serve objections or proposed amendments within 14 days" of service. *Id.* Finally, "the appellant must submit the statement to the district court for settlement and approval." *Id.*

### C. Motion for Reduction of Sentence Under First Step Act

Under the recently enacted First Step Act, a court may afford a defendant "compassionate release for 'extraordinary and compelling reasons.'" *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Sellers,* 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction,

5

(2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### III.   DISCUSSION

#### A.  Motion to Correct the Record

Defendant moves the Court to "correct an omission in the record" under Federal Rule of Criminal Procedure 36. (Doc. 147, "Mot. to Correct" at 1.) Defendant believes that the Judgment's failure to specify that the District of New Jersey sentence ran consecutive to the Middle District of Florida sentences *only* was an omission by the Court. (*Id.* at 2.) Defendant believes that this proposed correction would reflect the Court's intention to have the Southern District of Indiana sentence run concurrently with the sentence from the District of New Jersey. (*Id.*)

There are several impediments to granting the requested relief under Rule 36. First, the Court notes that this request is substantially similar, if not identical, to Defendant's prior Motion to Correct Error in the Judgment that this Court denied on November 18, 2019. (*See* Doc. 140.) Defendant has not advanced any new arguments in support of his position that would warrant a different result.

Second, Rule 36 is not an appropriate mechanism to request the proposed change to the Judgment. The effect of Defendant's proposed change would have the District of New Jersey sentence run concurrently with the Southern District of Indiana sentence. This would clearly be a substantive modification of sentence and not the sort of technical, clerical mistake contemplated by Rule 36. *See, e.g.*, *United States v. Werber*, 51 F.3d 342 (2d Cir.1995) (district court lacked jurisdiction under Rule 36 to modify a sentence to reflect its unexpressed intention at sentencing to depart in order to ensure defendants received credit for time spent imprisoned on state

sentences); *Guevremont*, 829 F.2d at 426 (a Rule 36 error "must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature."); *United States v. DeLeo*, 644 F.2d 300, 301–02 (3d Cir.1981) ("Rule 36 applies only to clerical mistakes and errors in the record; it does not authorize substantive alteration of a final judgment.").

Third, as explained in the next section, the Court finds that it was not Judge Irenas' intention for the District of New Jersey sentence to run concurrently with the Southern District of Indiana sentence. Thus, even if the Court could use Rule 36 to alter the judgment to reflect Defendant's request, this modifier would "go far beyond correcting a clerical oversight or omission" and instead "would be altering the judgment of sentence as imposed and as it was in fact intended to be imposed at the time[.]" *United States v. Smith*, 101 F. Supp. 2d 332, 340 (W.D. Pa. 2000). Accordingly, Defendant's Motion to Correct Omission in the Record is **denied**.

### B. Motion for Settlement and Approval of the Record

Defendant contends that a record accurately reflecting the October 2001 sentencing hearing is required for appellate review of this Court's decision to deny Defendant's Motion to Correct the Record. (Doc. 140.) Both the Government and Defendant agree that a transcript of the October 2001 hearing is unavailable. (*See* Mot. to Reconstruct Record at 1; Opp. at 6.) Defendant submitted a proposed reconstruction of the oral imposition of sentence, reconstructing the record as follows:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 45 months on each of Counts One and Two, to be served concurrently. The term of imprisonment imposed by this judgment shall run consecutively with the defendant's term of imprisonment pursuant to the judgments in Docket Number 89-60-CR-T-15B and 89-61-CR-T-13, Middle District of Florida[, only].

Request for Settlement and Approval of Record at 2. Defendant's proposed reconstruction appears in brackets. In essence, Defendant's addition of the word "only" changes the record to indicate

7

that Defendant's sentence from the District of New Jersey would run consecutive to the sentences from the convictions in the Middle District of Florida and concurrently with the sentence from the Southern District of Indiana. This reconstruction is based solely on Defendant's recollection that "Judge Irenas stat[ed] that the newly imposed 45-month sentence was consecutive to 'the Florida cases only.'" (Doc. 148, Affidavit Establishing Statement of the Record ¶3.)

As an initial matter, the Court notes that the Government did not object or respond to the Defendant's proposed statements within 14 days of service. Defendant argues that because the Government did not respond, the "proposed reconstruction, by rule, has become the record of the oral imposition of sentence," and therefore "there is nothing for the Court to settle or to approve." (Mot. to Dismiss at 2.) In response, the Government argues that "Rule 10(c) does not include a default mechanism in the event the appellant doesn't respond within the 14-day window." Rather, "this Court still must make a finding that Powers' statement accurately reflects what occurred." (Opp. at 13-14.)

The Court agrees with the Government. Although the Government did not respond, nothing in the plain text of Rule 10(c) requires an opposing party to respond to the motion for reconstruction. Rather, the text merely indicates that an opposing party *may* respond. Additionally, "Rule 10(c) was intended to produce objective reconstruction." 16A Fed. Prac. & Proc. Juris. § 3956.3 (5th ed.). Such objective reconstruction would not exist if the Court were required to simply approve Defendant's version of the record without further analysis as to the accuracy of the proposed reconstruction. Moreover, courts in other circuits have nevertheless denied motions for settlement and approval under Rule 10(c), even in the absence of objections from an opposing party. *See, e.g.*, *United States v. Peach*, No. 95-10052, 2020 WL 51185555 (D. Kan. Aug. 31, 2020). As such, the Court finds that regardless of whether there are objections or amendments to

the proposed reconstruction, Rule 10(c) requires the Court to independently evaluate the proposed reconstruction before approving. Accordingly, this Court will independently decide whether Defendant's statement accurately reflects the evidence that is available from the initial sentencing hearing.

The Court finds that Defendant's proposed version of the sentencing hearing contradicts the record as it currently exists. First, the Court notes that the record indicates that "[t]he term of imprisonment imposed . . . shall run consecutively with the defendant's term of imprisonment pursuant to the judgment in [the Middle District of Florida cases]." (Doc. 120.) The Judgment is silent as to whether the term will run concurrent with or consecutive to the Southern District of Indiana sentence. However, 18 U.S.C. § 3584(a) provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Accordingly, the "district court must specify in its sentencing order that sentences run concurrently; otherwise they run consecutively." *Free v. Miles*, 333 F.3d 550, 553 (5th Cir. 2003); *see also George v. Longley*, 463 F. App'x 136, 141 (3d Cir. 2012) (holding that if a federal sentencing court is silent as to whether a federal sentence is to be consecutive or concurrent to a state sentence, the BOP presumes that they are to be served consecutively). As such, here, because Judge Irenas' Judgment was silent as to whether the sentence would run concurrently with or consecutively to the sentence from the Southern District of Indiana, there is a presumption that the sentence was to run consecutively.

This presumption is further affirmed by evaluating the record from the first day of sentencing. The September 10, 2001 transcript reveals two important details: (1) that Judge Irenas was aware of the Southern District of Indiana sentence and (2) that Judge Irenas and Defendant both acknowledged that Defendant's sentence would run consecutive to his prior sentences.

First, the Government contends that the conviction and sentence from the Southern District of Indiana were included in the Pre-Sentence Report that Judge Irenas read and evaluated before imposing Defendant's sentence. (Opp. at 5.) Additionally, Defendant's conviction in the Southern District of Indiana was discussed at the sentencing hearing. (*See* Sept. 10 Tr. at 47 (discussing Defendant robbing banks in Indianapolis); *id.* at 50 (Judge Irenas discussing "the three matters that led to [Defendant] being here, today, the two matters in Tampa and the one matter in Indiana. When taken all together it accounts for the lengthy sentence [Defendant is] serving."); *id.* at 59 (Defendant discussing his trial "in Indianapolis on two bank robbery counts[.]")). Accordingly, the record demonstrates that Judge Irenas was aware of the Southern District of Indiana conviction and sentence.

Second, Judge Irenas and Defendant had a back-and-forth conversation acknowledging on the record that the District of New Jersey sentence would run consecutively to Defendant's other prior federal sentences. (*See* Sept. 10 Tr. at 14–15) (Judge Irenas acknowledging that "the sentence in this case . . . has to be imposed consecutively.")

Taken together, these facts create a presumption that Judge Irenas intended for the District of New Jersey sentence to run consecutive to *both* the Middle District of Florida and the Southern District of Indiana sentences. Accordingly, the Defendant's proposed reconstruction of the record directly contradicts what record evidence is available. As such, the Court declines to reconstruct the record as Defendant has submitted. Therefore, the Motion to Reconstruct the Record and the Motion for Settlement and Approval of the Record are **denied**. The Motion to Enter Order and Motion to Dismiss are each **denied as moot**.

### C. Motion for Reduction of Sentence Under First Step Act

The parties agree that Defendant has satisfied the exhaustion requirement and is thus permitted to bring a motion for reduced sentence in this Court. Thus, the Court focuses on the second step of the analysis: (1) whether Defendant has demonstrated that extraordinary and compelling reasons exist for his release and (2) whether the Section 3553(a) factors weigh in Defendant's favor.

#### 1. Whether Extraordinary and Compelling Reasons Exist

Defendant asserts that extraordinary and compelling reasons warrant a reduction in his sentence. (Mot. for Reduction at 6.) Defendant's argument relies primarily on the COVID-19 pandemic. (*Id.*) Defendant argues that he has health issues including chronic bronchitis, hypertension, and hypothyroidism. (*Id.*) Powers is 59 years old and claims he is historically susceptible to the flu and heart and lung issues. (*Id.*) The Government argues in response that a general risk of contracting COVID-19 does not meet the "extraordinary and compelling" standard, and that Defendant's particular medical conditions do not rise to the necessary "high risk" level. (Opp. at 27–31.) Additionally, the Government argues that, because there are no cases currently in the facility Defendant is held in, Defendant is less likely to contract COVID-19 in his institution than if released. (*Id.* at 29.)

While the Court does not seek to undermine the seriousness of this pandemic, Defendant's argument that the existence of COVID-19 is "extraordinary and compelling" is unpersuasive. The Third Circuit recently addressed the issue of COVID-19 as it pertains to prison populations, stating that the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, Civ. No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). Further, the fact that there are

no active COVID-19 cases at Allenwood USP, where Defendant is located, tends to negate a finding of extraordinary and compelling circumstances. Standing alone, Defendant's assertion that COVID-19 might, at some point, spread at Allenwood USP is insufficient to show "extraordinary and compelling reasons" for release. *See United States v. Stevens*, Crim. No. 19-350-02, 2020 WL 1888968, at *4 (E.D. Pa. Apr. 16, 2020) ("Although the Court is aware of the dangers posed by COVID-19 and is sympathetic to [Defendant's] concern about COVID-19 given his diabetes, speculation about possible future conditions at the FDC does not constitute an exceptional reason for release.") (collecting cases); *United States v. Haney*, Crim. No. 19-541, 2020 WL 1821988 at *5 (S.D.N.Y. Apr. 13, 2020) (denying a 61-year-old defendant's request for early release, stating that although the prison has several confirmed cases of COVID-19, "there is no meaningful counter-evidence suggesting that the COVID-19 virus is rapidly spreading in the [prison]"); *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862 at *2 (D.N.J. Apr. 24, 2020) (finding "the measures instituted by the BOP to be reasonable to address the virus outbreak" at a federal prison in New York even though several inmates had tested positive).

Defendant does go a step beyond arguing risks of COVID-19 generally by also arguing that he is particularly vulnerable to the virus. (Mot. for Reduction at 6.) He has chronic bronchitis, hypertension, and hypothyroidism. (*Id.*) In response, the Government argues that none of Defendant's health conditions place him at significantly greater risk of COVID-19. (Opp. at 30.) It asserts that none of Defendant's ailments are included in the CDC's list of those that place individuals at an increased risk for severe illness from COVID-19. (*Id.*)

According to guidance released by the CDC, certain categories of individuals face a higher risk from COVID-19.[1] These include "older adults"—defined as "65 years and older"—and "people of any age who have serious underlying medical conditions." *Id.* The serious medical conditions referenced include chronic lung disease, asthma, serious heart conditions, immunocompromising conditions, severe obesity, diabetes, chronic kidney disease, and liver disease.[2]

At 59 years old, Defendant is not categorized as an "older adult." Additionally, Defendant does not assert that he has any of the enumerated conditions, other than general hypertension. However, general high blood pressure does not constitute a high-risk category. Because Defendant's health conditions do not place him at a significantly greater risk of complications from COVID-19, he does not meet the required "extraordinary and compelling" standard for reduction of his sentence. *See United States v. Epstein*, Crim. No. 14-287-1, 2020 WL 2537648 (D.N.J. May 19, 2020) (denying an inmate's motion for sentence reduction after finding that his health conditions were under control while in prison).

   2. Section 3553(a) Factors

Moreover, an analysis of the Section 3553(a) factors further supports the denial of Defendant's request for sentence reduction. In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—

---

[1] *People Who Are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.
[2] *Groups at Higher Risk for Severe Illness: Serious Heart Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (stating that "COVID-19, like other viral illnesses such as the flu, can damage the respiratory system and make it harder for your heart to work").

>(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>(B) to afford adequate deterrence to criminal conduct;
>(C) to protect the public from further crimes of the defendant; and
>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553.

The Government concedes, and this Court agrees, that, because Defendant has served thirty years of his sentence, he has served sufficient time to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. (Opp. at 31–32.) However, the Government argues that Defendant's history and characteristics and the need to protect the public weigh against granting compassionate release. (*Id.*)

Defendant argues that he "renounced the criminal mentality and lifestyle in 1994[.]" (Mot. for Reduction at 6.) However, the Court notes that Defendant has committed several serious offenses in multiple jurisdictions and some of those offenses occurred after Defendant was imprisoned. In 2001, Defendant was convicted of escape from a correctional facility and possession of a stolen vehicle. Additionally, in 2015 Defendant pled guilty to assault on a federal officer while in custody. (Opp. at 7.) Moreover, the Government cites to Defendant's BOP disciplinary record, which it notes is "23 pages long and shows that throughout his incarceration Powers has continued to break the rules and act out in violent ways." (Opp. at 32.) Based on these facts and the totality of Defendant's actions, this Court finds that Section 3553(a) factors weigh against granting Defendant's motion for a reduced sentence. In finding so, the Court is cognizant of the need to protect the public and the seriousness of Defendant's conduct while in prison. *See United States v. Butler*, Crim. No. 19-834-10, 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying a motion for early release of a MDC inmate with asthma and a serious heart condition, after finding that, "[w]hile the prospect of contracting COVID-19 undeniably presents a serious

14

risk to [the defendant's] health, his [early] release . . . at least equally exposes the community to a serious risk that he would resume violence."). Accordingly, the Motion for Reduction of Sentence is **denied.**[3]

## IV.     CONCLUSION

For the reasons contained herein, (1) Defendant's Motion to Appoint Counsel (Doc. 142) is **denied as moot**; (2) Defendant's Motion to Reconstruct Record (Doc. 146) is **denied**; (3) Defendant's Motion to Correct Omission in the Record (Doc. 147) is **denied**; (4) Defendant's Motion for Settlement and Approval of Record (Doc. 148) is **denied**; (5) Defendant's Motion to Enter Order (Doc. 149) is **denied as moot**; (6) Defendant's Motion for Reduction of Sentence under First Step Act (Doc. 151) is **denied**; and (7) Defendant's Motion to Dismiss Several Pending Motions as Moot (Doc. 156) is **denied as moot**. An accompanying Order shall issue.

Dated: 10/1/2020                                                                                       /s/ Robert B. Kugler
                                                                                                        ROBERT B. KUGLER
                                                                                                        United States District Judge

---

[3] The Court is aware that the District of Arizona recently granted Defendant's Motion for a Modification of Imprisonment Terms in *United States v. Powers*, No. CR-15-647 TUC FRZ (EJM) (D. Ariz. May 28, 2020). However, in that case, the Government did not oppose Defendant's motion. Accordingly, the court found that "there was no evidence presented that the Defendant [was] a danger to the safety of any other person or to the community[.]" *Id.* at 3. The court's decision seemed to rest on the "Government not having filed a response in opposition[.]" *Id.* at 4. Conversely, here, the Government has responded and argued that Defendant has failed to establish extraordinary and compelling reasons and that the Section 3553(a) factors weigh against a reduction in sentence. In light of the Government's opposition, Third Circuit precedent, and the aforementioned analysis, this Court declines to follow the District of Arizona's decision.